IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 05-50030 JLH |
| | ) | |
| ARWAH JABER | ) | |

### DEFENDANT'S MOTION IN LIMINE WITH OFFER OF PROOF
### AND MEMORANDUM IN SUPPORT

Defendant moves in limine to prohibit the government from introducing certain evidence against the defendant at the trial in this case under F.R.Ev. 401-404(a) as irrelevant, more prejudicial than relevant, and evidence of alleged bad character.

#### INTRODUCTION

The superseding indictment, Count 1 (doc. 31, filed September 29, 2005):

**COUNT ONE**
(Attempting to Provide Material Support to a Foreign Terrorist Organization)

On or about June 14, 2005, within the Western District of Arkansas and elsewhere the defendant ARWAH J. JABER, within the United States and subject to the jurisdiction of the United States, did knowingly and intentionally attempt to provide material support and resources, as that term is defined in 18 U.S.C. § 2339A (b), including personnel (himself), to a foreign terrorist organization, to wit, Palestinian Islamic Jihad, which was designated by the Secretary of State as a foreign terrorist organization, pursuant to Section 219 of the Immigration and Nationality Act, as added by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), on October 8, 1997, and re-designated as a terrorist organization on October 5, 2001 and October 2, 2003.
All in violation of Title 18 U.S.C. § 2339B(a)(1).

June 14, 2005 is the day defendant was arrested at the Northwest Arkansas Regional Airport shortly after he arrived to board a Northwest flight to Memphis, to Amsterdam, to Amman, Jordan for a two week vacation with his wife. The crux of this case is whether this defendant "did, [on that date,] knowingly and intentionally attempt to provide material support and resources, as

that term is defined in 18 U.S.C. § 2339A(b), including personnel (himself), to a foreign terrorist organization, . . . ." All the government knew was that the defendant and his wife were flying to visit his family because his sister was getting married. They had a return ticket dated July 5, 2005, and he would defend his dissertation at the University of Arkansas for his doctorate in chemistry, and then he would take a job at American University in Kuwait.

The only evidence the government has that defendant desired to join a "terrorist organization" is a statement he made in frustration to people at the U of A because his department head was unreasonably holding up his doctoral degree and an e-mail to that person that the government will put into evidence at the trial: "I decided to take an honorable job in Palestine with the Palestinian Islamic Jihad organization to pursue a more noble cause of freedom, justice, and peace for the Palestinians and to fight the Israeli terrorism." (Detention Hearing Tr. at 139:16-19) Can the government prove beyond a reasonable doubt that, on that day, he was knowingly and intentionally going to provide material support (himself) to a terrorist organization when he was taking a vacation to visit his sister who was getting married shortly?[1] Granted, the circumstantial evidence

---

[1] We also observe that this prosecution apparently violates the policies in the U.S. Attorney's Manual § 9-91.000 for lack of proof and should never have been brought in the first place:

Personnel

> It is the policy of the Department that a person may be prosecuted under § 2339B for providing "personnel" to a designated foreign terrorist organization if and only if that person has knowingly provided the organization with one or more individuals to work under the foreign entity's direction or control. Individuals who act independently of the designated foreign terrorist organization to advance its goals and objectives are not working under its direction or control and may not be prosecuted for providing "personnel" to a designated foreign terrorist organization. Only individuals who have subordinated themselves to the foreign terrorist organization, *i.e.*, those acting as full-time or part-time employees or otherwise taking orders from the entity, are under its direction or control.

may be enough, and this is something we do not concede, to get this to a jury, but the nexus and inference between the two events is entirely lacking. If the detention hearing is any example of the quality of the government's case, they have a long row to hoe, as the Magistrate Judge noted in granting him release. He said something; he later attempted to get on an airplane. How does the government prove the connection between the two? That is its burden beyond a reasonable doubt in this case. That is why the transcripts become so critical: the government will be using them to bridge the gap in its proof by seeking to create hatred toward the defendant in the jury.

The proof will show that defendant is Palestinian by birth, born on the West Bank, and he became a naturalized U.S. citizen in 2001. He has been in the United States fourteen years. He is married to a U.S. citizen, Dawn Jaber, from Kansas on November 12, 1994, whom he met while in college and teaching at Pittsburgh, Kansas. He is such a threat to national security that he has spent nearly the last year under electronic monitoring (de facto home detention); not in jail, not in prison.[2]

The Palestinian [or Palestine] Islamic Jihad is designated as a terrorist organization by the U.S. State Department, not because it is a threat to the United States, but because it is a threat to Israel, http://www.state.gov/s/ct/rls/crt/2005/65275.htm:

**Palestine Islamic Jihad (PIJ)**
a.k.a. Islamic Jihad of Palestine;
PIJ-Shaqaqi Faction;
PIJ-Shallah Faction;

---

http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/91mcrm.htm.  Regretfully, a violation of the U.S. Attorney's Manual provides no remedies to victims.
It has been noted that nearby § 9-91.100 was adopted to prevent constitutional implications. *United States v. Khan*, 309 F.Supp.2d 789, 822 (E.D. Va. 2004).

[2] Just how many accused terrorists get to stay at home and prepare for trial? This defendant may be the only one in the United States because of the thin reeds on which Count 1 is based.

3

Al-Quds Brigades

**Description**
Formed by militant Palestinians in the Gaza Strip during the 1970s, Palestine Islamic Jihad (PIJ) is committed to the creation of an Islamic state in all of historic Palestine and the destruction of Israel through attacks against Israeli military and civilian targets.

**Activities**
PIJ terrorists have conducted numerous attacks, including large-scale suicide bombings, against Israeli civilian and military targets. In 2005, the group increased operational activity over the previous year and claimed several attacks against Israeli interests, including five suicide bombings. PIJ continues to plan and direct attacks against Israelis both inside Israel and in the Palestinian territories. *Although U.S. citizens have died in attacks mounted by the PIJ, the group has not directly targeted U.S. interests.*

**Strength**
Unknown.

**Location/Area of Operation**
Primarily Israel, the West Bank, and the Gaza Strip. The group's central leadership resides in Syria. Other leadership elements reside in Lebanon, and official representatives are scattered throughout the Middle East.

**External Aid**
Receives financial assistance primarily from Iran. Syria provides the group with a safe haven. (emphasis added)

The al-Quds Brigades of the PIJ are its armed military force. MIPT Terrorism Knowledge Base, http://www.tkb.org/Group.jsp?groupID=4430. Since it was organized in the 1970s, the one and only violent attack attributed to the PIJ or the al-Quds Brigades was November 4, 2002 in Israel with three fatalities and 69 injuries. *Id.* (incidents last updated May 10, 2006, last visited May 31, 2006).[3] The PIJ now undertakes political activities. *Id.*

The PIJ is not a direct threat to the United States or our citizens. The government never

---

[3] Note the conflict between the report of the Department of State reporting multiple incidents, the last in 2005, and the MIPT website reporting one incident in 2002.

4

contended as such at the detention hearing.

## TRANSLATIONS OF SONGS TAKEN FROM DEFENDANT'S COMPUTER TRANSLATED FROM ARABIC SHOULD BE EXCLUDED AS EVIDENCE

When the government seized defendant's computer, it scoured his hard drive in an effort to find anything potentially incriminating and they found Arabic songs that they will contend the defendant downloaded.

Transcripts were provided to the defense by the government by fax on May 31, 2006, and they are submitted under seal in a separate envelope so as to not prejudice the defendant before the venire should the court grant the motion in limine or the government otherwise fail to get them into evidence.[4]

### A. Political Speech and First Amendment Considerations

Some of the songs are apparently by Muslim extremists, but they still constitute political speech, just as the speech of Malcolm X or Louis Farrakhan is protected political speech. The mere fact they are on his computer does not mean that he ascribes to a belief in them. The same could be said of rap music with a violent theme. Listening to it does not mean that one believes the message. Because someone watches a particular pundit on cable television or reads the editorial page of a particular newspaper does not mean that person believes in what that pundit or editorial writer says.

They are pure political speech, and it is the basis of freedom of thought and free speech enshrined in the First Amendment to the U.S. Constitution, and its First Amendment protection

---

[4] Defendant does not agree with the accuracy of these transcripts. We have been trying to many months to get copies of the specific songs so the defendant can translate them himself. As of the time of filing this motion, they have not been provided.

5

alone, compared to the charge against the defendant should prevent the government from putting them into evidence.

"Liberty presumes an autonomy of self that includes freedom of thought, belief, expression . . . ." *Lawrence v. Texas,* 539 U.S. 558, 562 (2003). "Freedom of speech plays a fundamental role in a democracy; as this Court has said, freedom of thought and speech 'is the matrix, the indispensable condition, of nearly every other form of freedom.' *Palko v. Connecticut,* 302 U.S. 319, 327 (1937)." *Federal Election Comm. v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 264 (1968).

As constitutionally protected speech, it is more prejudicial than relevant to put them into evidence in this case under F.R.Ev. 403 (analysis below) when the content bears no relation to Count 1 of the indictment.

### B. No Relevance (F.R.Ev. 401)

Because of the allegation that this defendant was allegedly traveling to Palestine to seek to aid the PIJ, an organization with no intention of harming the United States or United States citizens, they are irrelevant under F.R.Ev. 401 because it lacks "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In the overall scheme of things, they prove absolutely nothing to aid the government in proving Count 1.

Instead, they are intended to prejudice this accused. There can be no other purpose.

### C. More Prejudicial Than Relevant (F.R.Ev. 403)

These songs are more prejudicial than relevant and are thus inadmissible under F.R.Ev. 403. The government has to know that they have no relevance to the charge in Count 1 and they are seeking admission to stigmatize this defendant and make the jury essentially hate him as an

6

America-hater. All the testimony will be to the contrary, but this political speech on his computer can only be intended to harm him in the eyes of the jury with a blow below the belt.

1 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 403.1 at 298-310 (5th ed. 2001):

> In exercising its discretion in applying this standard, the court should consider the importance of the fact of consequence for which the evidence is offered in the context of the litigation, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed, and, where appropriate, the potential effectiveness of a limiting instruction, Rule 105. In evaluating the incremental probative value of the evidence, the trial judge must assume that the evidence will be believed by the trier of fact. Obviously where either the probative value of the offered evidence or the importance of the fact sought to be proved is relatively slight, the likelihood of exclusion under Rule 403 is enhanced.
> 
> Rule 403 provides for the exclusion of relevant evidence on the grounds of unfair prejudice. Since all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered, prejudice which calls for exclusion is given a more specialized meaning: *an undue tendency to suggest decision on an improper basis,* commonly, but not necessarily and emotional one, such as bias, sympathy, *hatred, contempt, retribution or horror.* (footnotes omitted, emphasis added)

As the court can see from the transcripts, the tendency is only to suggest a verdict on an unfair basis, particularly when the government's theory of the case at the detention hearing and in the indictment was that the PIJ is not a threat to the United States or its citizens. And, when he got to the airport, they had no proof he was going to aid a foreign terrorist organization.

### D. UNLAWFUL CHARACTER EVIDENCE (F.R.EV. 404(a))

This evidence is offered only to show that this defendant should be convicted because he is of bad character for allegedly listening to certain Muslim extremist beliefs. Accordingly, this ties back to the First Amendment issue and the danger of unfair prejudice.

### CONCLUSION

The motion in limine to exclude these songs should be granted.

Respectfully submitted,

*/s/* 
JOHN WESLEY HALL, JR.
 Ark. Bar No. 73047
PATRICK J. BENCA
 Ark. Bar No. 99020
1311 Broadway
Little Rock, Arkansas 72202-4843
(501) 371-9131 / fax (501) 378-0888
e-mail: ForHall@aol.com

*Attorneys for Defendant*

### CERTIFICATE OF SERVICE

I, John Wesley Hall, Jr., certify that this document was e-filed, and, therefore, e-served on Wendy L. Johnson, Assistant U.S. Attorney on June 1, 2006.

*/s/*
Patrick J. Benca