**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **No. 5:05CR50030-001** |
| | ) | |
| **ARWAH JABER** | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

In support of this Memorandum, Arwah Jaber states:

Defendant has outlined below factors that this Court should consider in imposing an appropriate sentence in this case. With the factors in mind, it is axiomatic that whatever the proposed sentence is, it should be sufficient but not greater than necessary to satisfy the purpose of sentencing. The court heard the proof at trial, and the court knows that A.J. Jaber is not a serious threat to society.

Defendant submits that this court can and should depart from the sentence suggested by the PSR for a variety of reasons, the most pertinent of which is that he has already been incarcerated for 17 days and, after that, was under virtual house arrest for 355 days, 10 days short of one year. Furthermore, all kinds of extremely serious collateral consequences flow from his conviction that are beyond the powers of this court. When everything is put on the scale, the scale tips toward leniency in sentencing. He has been punished enough, and he faces likely action from Immigration and Customs Enforcement to deport him for his convictions, even though he will be appealing to the Eighth Circuit

The following is a list of mitigating factors that apply to Mr. Jaber's case that we respectfully urge the court to follow:

I.      **The General Law in Support of Mitigation in Sentencing**

A.      ***Considerations of* Booker *and* Koon**

In *United States v. Booker*, 125 S.Ct. 738 (2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory.  The other factors set forth in 18 U.S.C. § 3555(a) must also be considered in fashioning the appropriate sentence under *Booker*.  These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for law and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the need to avoid unwarranted sentencing disparities, and to provide restitution to the victims under *Booker*.

The district court may now consider even those mitigating factors that the advisory guidelines prohibit: *e.g.*, poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. *United States v. Ranum*, 353 F. Supp. 2d 984 (E.D. Wisc. 2005) ("The guidelines' prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the 'history and characteristics' of the defendant"); *United States v. Myers,* 353 F. Supp. 2d 1026 (S.D. Iowa 2005) ("The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.... Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range") *see*

2

*also* 18 U.S.C. § 3661 ("no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (cited in *Booker*). Consider also that Congress had directed that the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with [the purposes ofsentencing]" (emphasis added). 18 U.S.C. § 3553(a). This is the "primary directive" of the sentencing statute.

The Supreme Court said in *Koon v. United States,* 518 U.S. 81, 113 (1996), that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Even before *Booker*, the Sentencing Guidelines "place[d] essentially no limit on the number of potential factors that may warrant a departure." *Koon,* 518 U.S. at 106; *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir.1999) (en banc) (there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. §3661 ("no limitation shall be placed on the information" a court can receive and consider for purposes of imposing an appropriate sentence).

A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the guidelines." Even when the guidelines were mandatory, they did not "displace the traditional role of the district court in bringing compassion and common sense to the sentencing process….In areas where the Sentencing Commission has not spoken . . . district courts should not hesitate to use their discretion in devising sentences that provide individualized justice."

3

*United States v. Williams*, 65 F.3d 301, 309-310 (2d Cir. 1995).

"It is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." *United States v. Gaskill*, 991 F.2d 82, 86 (3d Cir. 1993).[1]

The Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom."  *United States v. Dominguez*, 296 F.3d 192, 196 n. 7 (3d Cir. 2002) (quoting *United States v. Johnson*, 964 F.2d 124, 125 (2d Cir.1992)).

The sentence should not be too harsh for the conduct.  "To impose the harsh sentence suggested by Probation and the government under the Guidelines without appropriate downward departures would amount to an act of needless cruelty given the nature of the crimes committed and the personal circumstances of these defendants." *United States v. Blarek*, 7 F. Supp. 2d 192, 211 (E.D. N.Y. 1998).

 Finally, remember that "[i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm." *United States v. Myers* , supra, 1127,  "'If the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm.'" (The Hon. Myron H. Thompson, Editorial, Sentencing and Sensibility, N.Y. Times, Jan. 21, 2005).

---

[1]  "The Guidelines are not a straightjacket for district judges." *United States v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991).

### B.  *18 U.S.C. § 3553(a)*

18 U.S.C. § 3553(a) provides:

> (a)    Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed–
>
> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)    the kinds of sentences available;
>
> (4)    the kinds of sentence and the sentencing range established [at the time].
>
> (5)    any pertinent policy statement–
>
> (A)    issued by the Sentencing Commission pursuant ... ; and
>
> (B)    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7)    the need to provide restitution to any victims of the offense.

## II.    Mitigating Considerations as to Arwah Jaber

All things considered in this case, a jail sentence is unnecessary, considering § 3553(a)(2) "reflect[ing] the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Adequate deterrence to criminal conduct has been achieved, considering what defendant went through in defending these charges and what will happen to him when the court system is done with him and an Immigration Judge in the Executive Branch takes over that part of the case.  Mr. Jaber's criminal conduct was isolated to these instances, so the

public needs no further protect from him, and, even if it did, the Immigration consequences will certainly take care of that. Finally, there is no "needed educational or vocational training, medical care, or other correctional treatment" necessary for him.

All this counsels against further incarceration in this case. The punishment to be meted out by this court and the executive branch before an Immigration Judge is quite punishment enough for these offenses without Mr. Jaber having to serve another day.

      **A.**     ***The advisory guideline "greater than necessary" and the purpose of sentencing is satisfied by a sentence below the guidelines***

A jail sentence here is greater than necessary for a realistic penal sanction. *United States v. Redemann*, 295 F. Supp. 2d 887 (E.D. Wisc. 2003) (in bank fraud case where guidelines were 18-24 months, court departed downward two levels in part because case outside the heartland and the guideline sentence was "greater than necessary" to satisfy the "purposes" of § 5K2.20. "Courts have long recognized that where the sentence called for by the guidelines would result in punishment greater than necessary the court can depart downward." Here defendant had been civilly prosecuted by the office of the comptroller of the currency and had to pay $75,000, suffered adverse publicity in small town, ruined his business, and caused ill health and ultimate death of his wife—so "the primary purposes of sentencing were partially achieved before the case was filed....and [the collateral punishment] partially satisfied the need for just punishment—district judges may consider such successive punishments ...in deciding whether to depart...."; also general deterrence achieved given what happened to the defendant ); *United States v. Gaind*, 829 F.Supp. 669 (S.D. N.Y. 1993) (departure granted in part because the destruction of the defendant's business already achieved to a significant extent some although not all of the objectives otherwise required to be sought through the sentencing process so 18 U.S.C. § 3553

6

(a), which states that "court shall impose a sentence sufficient, but not greater than necessary" to achieve the purposes of sentencing "requires me to depart downward from the Guidelines"), *aff'd,* 31 F.3d 73 (2d Cir. 1994).

### B.   *Departure To Substitute Community Confinement For Prison*

Application Note 6 to U.S.S.G § 5C1.1 authorizes a departure that permits substitution of more community confinement than otherwise authorized for an equivalent number of months of imprisonment for treatment ("e.g. substitution of twelve months in residential drug treatment for twelve months of imprisonment").[2]

Defendant was arrested and jailed for 17 days before Judge Jones released him on electronic monitoring.  When defendant was on electronic monitoring through the trial from about July 1, 2005 to June 20, 2005 where he was able to leave the house only *two hours* a week for checking in with Probation.  He was under virtual house arrest for a 10 days less than a year.

After the verdict, defendant remained on electronic monitoring, but it was changed to allow him out from 6 a.m. to 10 p.m.  This is considerably more freedom, but he was unable to leave town overnight without express permission.  This latter time period is only a minor factor compared to the first incarceration and house arrest.

### C.   *Work Ethic and Employment*

It is significant that, while on house arrest, defendant was able to defend his dissertation and get his Ph.D. in Chemistry, but he will likely never get to teach in an American classroom again.

---

[2] But *see United States v. Malley* , 307 F.3d 1032 (9th Cir. 2002) (this provision does not authorize reduction in the offense level).

The defendant's work ethic was found to be a factor in *United States v. Thompson*, 74 F. Supp. 2d 69 (D. Mass. 1999) (departure from 87 to 60 months in drug case-setting out framework for determining when employment history and family ties warrant downward departure as extraordinary – here "not only did defendant exhibit a sustained commitment to his family dating back to the instant he became a father, he consistently worked to provide for them"), *reversed* 234 F.3d 74 (1st Cir. 2000) (district court erred in limiting its inquiry to cases involving crack cocaine dealers and then asking whether defendant's record stood apart from the rest); *United States v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered the defendant's "long impressive work history ...where good jobs are scarce."  Even though under § 5H1.5 ordinarily a discouraged basis, here unusual); *United States v. Higgins*, 967 F.2d 841 (3d Cir. 1992) (young age and stable employment will justify a downward departure if "extraordinary"; remanded to see if judge realized he had power); *United States v. Alba*, 933 F.2d 1117 (2d Cir. 1991) (long-standing employment at two jobs); *United States v. Jagmohan*, 909 F.2d 61 (2d Cir. 1990) (exceptional employment history and nature of the crime);  *United States v. Big Crow*, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (excellent employment record);  *United States v. Shoupe*, 988 F.2d 440 (3d Cir. 1993) (age and immaturity considered in whether criminal history overstates propensity); *United States v. Ragan*, 952 F.2d 1049 (8th Cir. 1992) (defendant stopped using drugs a year before his indictment, maintained steady employment, and offered to cooperate-departure affirmed where government did not object at sentencing).

### D.    *Mr. Jaber's Otherwise Outstanding Character*

This was recognized as a factor in *United States v. Wachowiak,* 412 F. Supp. 2d 958 (E.D. Wisc. 2006) (where 24 year old music student convicted of possessing child pornography, and guildelines 121-151 months, and where he is in treatment and low risk of recidivism, and strong support from family, court imposes 709 months in part because the guidelines failed to consider defendant's otherwise outstanding character, as depicted in the many supportive letters....while § 3553 (a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history.  In cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range. *See, e.g., United States v. Page,* 2005 U.S. Dist. LEXIS 19152, at *12 (E.D. Wis. Aug. 25, 2005); *United States v. Ranum,* 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005).

### E.    *Ruin of Reputation*

The court can also consider the ruin of defendant's reputation which also will lead to adeportation action against him.  *United States v. Adelson,* 441 F. Supp.2d 506 (S.D. N.Y. 2006) (in securities fraud where guidelines called for life, court imposes 42 months noting that factor of specific deterrence accounted for because "[w]ith his reputation ruined by his conviction, it was extremely unlikely that he would ever involved himself in future conduct.").

Defendant is also likely unemployable in the United States even if he could stay.

### F.    *Prison time more significant for first offender so below guideline sentence is more just*

This was recognized as a factor in *United States v. Baker,* 445 F.3d 987 (7th Cir. 2006) (in distribution of child porn case court affirms below guideline sentence of 78 months (guidelines called for 108) noting that "significant is the district court's find that a prison term would

9

mean more to Mr. Baker than to a defendant who previously been imprisoned.  Consideration of this factor is consistent with § 3553(a)(2)(A), and "adequate deterrence," *Id.*  § 3553(a)(2)(B)");

*United States v. Cull,* 446 F. Supp. 2d 961 (E.D. Wisc. 2006) (in marijuana case where guide-lines 10 to 14 months, though defendant "not entitled to departure under pre-Booker standards" and where "nothing extraordinary about the case or the defendant," court imposes 2 month jail with 4 months home confinement as a condition of supervised released imposed because "[d]efendant had never been confined before, so [2 months jail time] was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances.");

*United States v. Qualls,* 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

> ### G. *Mr. Jaber has already punished, to a not insignificant extent,  by pre-trial home detention*

Defendant was incarcerated for 17 days, and Judge Jones put him on electronic monitor-ing that was so tight he was under virtual house arrest for 10 days short of a year. This was recognized as a factor in *United States v. Miller*, 991 F.2d 552, 554 (9th Cir. 1993) (that defendant has "already been punished to some extent" by pretrial home detention" is grounds for departure); *United States v. Romualdi*, 101 F.3d 971 (3d Cir. 1996) ("it may be proper to depart because of the ... home detention [a defendant] had already served.").

> ### H. *Defendant's admission of the facts of the convicted counts*

Defendant admitted the factual basis for the counts he was convicted of.  While he does not necessarily qualify for acceptance of responsibility under U.S.S.G. § 3E1.1, the language of

that Guideline applies: "If the defendant clearly demonstrates acceptance of repsonsibility for his offense, decrease the offense level by 2 levels."  As for timeliness (Application Note 1(h)), defendant was always willing to plead guilty to everything but the terrorism charge, but he did not want to automatically agree to deportation, and there were problems working out where he would go if deported.  If a defendant goes to trial on one count and admits the others, the judge is required to assess the "totality of the situation" in determining whether to depart downward under 3E1.1.  *United States v. Cohen,* 171 F.3d 796 (3d Cir. 2001).

The totality of the situation was this:  Defendant was charged with can only be described as a heinous crime that instilled great interest and, according to some of the jurors excluded from the jury as a result of the voir dire, great approbation and stigmatization.  The parties discussed a settlement, but they could not agree on the non-judicial portion of the settlement, and that settlement would have had defendant plead to the counts he was convicted of.  As a result of not being able to reach an agreement, defendant had to go to trial on the terrorism charge and risk everything.  He ended up where the settlement talks broke off, except that the Executive Branch has to go forward with potential deportation as a result of the conviction.

This counsels in favor of mitigation of the sentence, even if a 3E1.1 is rejected by the court on the convicted counts.

## I.     *Defendant already punished by Collateral Consequences*

The collateral consequences here are nothing short of catastrophic:  Loss of citizenship, potential arrest by ICE officers for a deportation proceeding based on the convictions (even though defendant will appeal), deportation to another country, necessitating his wife leaving with him.  Defendant's wife will be leaving her family in Kansas to move overseas to remain with her

husband, whom she stands by.

See *United States v. Wachowiak,* 412 F. Supp. 2d 958 (E. D. Wisc. 2006) (where 24 year old music student convicted of possession child pornography, and where he is in treatment of low risk recidivism, and strong support from family and community, court imposed 70 months where guideline range of 121-150 months in part because "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction.  His future career as a teacher was ruined, and he was compelled to resign as a piano teacher of children and as a church musician,   He will also be forced to live with the stigma of being a convicted sex offender): *United States v. Samaras,* 390 F. Supp. 2nd 805, 809 (E.D. Wis. 2005) (where defendant convicted of fraud sentence below guideline warrant in part because "as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not considered by the guidelines"); *United States v. Stone,* 374 F. Supp. 2d 983 (D. N.M. 2005) (where defendant pled guilty to aggravated sex abuse and guidelines 78-97 months, court accepts Rule 11(c) agreement of 60 months because "since this incident... Boeing has terminated Stone's employment and Stone's wife divorced him.  Stone has suffered a lot as a result of his crime [and] the deviation is [only] eighteen months less than the Guideline sentence.   The Court concludes that a sixty month term of incarceration, coupled with Stone's personal losses, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment."; *United States v. Redemann,* 295 F. Supp. 2d 887, 894-97 (E.D. Wis. 2003) (departing downward where defendant suffered collateral consequences from conduct including loss of his business).

### J.     *The Good in Mr. Jaber's Life can Mitigate the Bad*

This was recognized as a mitigating factor in *United States v. Adelson,* 441 F. Supp. 2d

506 (S.D. N.Y. 2006) (in securities fraud case, where guidelines, court imposes 42 month sentence in part because of the defendant's past integrity and good deeds. "But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

### K.    *Sua Sponte Departure By Court*

It was implicitly recognized in *United States v. Vizcaino*, 202 F.2d 345, 348 (D.C. Cir. 2000), that the district court may depart sua sponte but finding no plain error not to do so. *See also United States v. Ekhator*, 17 F.3d 53 (2d Cir. 1994) (even where defendant agreed not to ask for downward departure, court may do so sua sponte if unusual family circumstances; remanded); *United.States v. Williams*, 65 F.3d 301, 309-10 (2d Cir. 1995) ("we wish to emphasize that the Sentencing Guidelines do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process . . . In areas where the Sentencing Commission has not spoken . . . district courts should not hesitate to use their discretion in devising sentences that provide individualized justice").

### III.    Need for the Sentence Meted Out

18 U.S.C. § 3553(a)(2) provides for the need for the sentence imposed

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)    to afford adequate deterrence to criminal conduct;
> (C)    to protect the public from further crimes of the defendant;

and

      (D)    to provide the defendant with needed educational or voca-
tional training, medical care, or other correctional treatment in the most
effective manner[.]

## CONCLUSION

The above mitigating factors apply to Mr. Jaber.  The court heard the evidence at trial, and the court saw Mr. Jaber testifiy, as well as his supporting witnesses to good character.  There will also be letters submitted to the Court the day before sentencing, or sooner.

What is the "totality of the situation"?  Based upon all the mitigating factors, the letters of support, and the testimony at the trial, defendant respectfully implores that the Court consider a sentence below the guidelines range of 15 to 21 months determined by the PSR.

Indeed, because defendant had been under house arrest for a year, the devastating collateral consequences of loss of American citizenship that he will suffer, along with likely deportation, defendant respectfully requests that the court consider three years supervised release as the appropriate sentence.  This is a unique case.  That sentence here satisfies all the requirements of § 3553(a)(2).  With all due respect to the Sentencing Guidelines and the government's position that jail is required, jailing Mr. Jaber at this point serves no penological or societal interest other than vengeance, and vengeance is not a proper purpose of the criminal justice system.  The Executive Branch still has dire plans for Mr. Jaber, and that is certainly punishment enough.

Respectfully submitted,

/s/ *John Wesley Hall, Jr.*
/s/ *Patrick J. Benca*
JOHN WESLEY HALL, JR.
  Ark. Bar No. 73047
PATRICK J. BENCA
  Ark. Bar No. 99020
1311 Broadway
Little Rock, Arkansas 72202-4843
(501) 371-9131 / fax (501) 378-0888
e-mail:  ForHall@aol.com
                PJBenca@aol.com
        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that a copy was served on AUSA Wendy Johnson by e-filing on November 13, 2006.

/s/  *Patrick J. Benca*
Patrick J. Benca

15